IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

*****************************************************************************

| | | |
|---|---|---|
| **WILLIAM HOLMES**, | * | CIVIL ACTION-LAW |
| | * | |
| Plaintiff, | * | Case No.: |
| | * | |
| v. | * | |
| | * | |
| **ALLEGHENY HEALTH NETWORK, ALLEGHENY COUNTY, Superintendent Orlando Harper, Administrative Assistant Nikki Kazmarczak, Counselor Monte Stephens, Five Unknown Nurses** | * | |
| Defendants. | * | JURY TRIAL DEMANDED |

Counsel for Plaintiff
LJK LAW PLLC
Louis J Kroeck IV
PA ID #210045
Lou@ljk-law.com

*****************************************************************************

## COMPLAINT IN CIVIL ACTION

AND NOW COMES Plaintiff, William Holmes, by and through the undersigned counsel, and files the following Complaint and avers as follows:

### INTRODUCTION

1.  This case is brought pursuant to section 1983 of the Civil Rights Act 42 U.S.C. 1983 for violations of the Plaintiff's rights under the Eighth Amendment of the United States Constitution. Specifically, Plaintiff alleges that the Defendants' policies and actions relating to

Plaintiff's serious medical condition rose to the level of deliberate indifference in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. 1331 over the constitutional claims contained in this Complaint as well as the claims arising under 42 U.S.C. 1983.

3. Venue is proper as all events giving rise to this action occurred within the Western District and it is believed that all defendants reside within the district.

## PARTIES

4. Mr. Holmes is an adult individual who was incarcerated at the Allegheny County Jail during the time of the events described in this Complaint.

5. Allegheny Health Network, is a nonprofit corporation with a principle place of business located at 30 Isabella St. Pittsburgh, PA 15212 which operates in various capacities throughout the Commonwealth of Pennsylvania.

6. Defendant Allegheny County is a county government organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at 436 Grant Street, Pittsburgh Pennsylvania 15219. Allegheny County is in possession and control of the Allegheny County Jail, located at 950 Second Avenue, Pittsburgh, Pennsylvania 15219.

7. Upon information and belief, Superintendent Orlando Harper is a corrections officer at the Allegheny County Jail with his principle place of business being 950 Second

Avenue, Pittsburgh, Pennsylvania. Defendant Harper is sued in this action in his individual capacity and in his official capacity as a county employee.

8. Upon information and belief, Nikki Kazmarczak is an Administrative Assistant at the Allegheny County Jail with her principle place of business being 950 Second Avenue, Pittsburgh, Pennsylvania. Defendant Kazmarczak is sued in this action in her individual capacity and in her official capacity as a county employee.

9. Upon information and belief, Monte Stephens is a Counselor at the Allegheny County Jail with his principle place of business being 950 Second Avenue, Pittsburgh, Pennsylvania. Defendant Stephens is sued in this action in his individual capacity and in his official capacity as a county employee.

10. Upon information and belief, at least five separate nurses assisted or rather, failed to assist Plaintiff with his medical needs. Their principle place of business being 950 Second Avenue, Pittsburgh, Pennsylvania. They are sued in this action in their individual capacity and as county employees.

**CASE BACKGROUND**

11. In September of 2015, Allegheny Health Network was hired by Allegheny County to provide medical care and health operations at the Allegheny County Jail, replacing Corizon Health Inc., a Tennessee corporation that had been providing privatized health care at the ACJ.

12. Mr. Holmes was routinely and systematically denied medication during his incarceration at the ACJ resulting in tangible injury and unwarranted pain and suffering.

## STATEMENT OF FACTS

13. William Holmes was incarcerated on August 28, 2017.

14. During intake, Mr. Holmes had two seizures which were witnessed and noted by Allegheny County Jail personnel.

15. He had also been previously incarcerated at the Allegheny County Jail and they were well aware of his condition, which is seizure disorder.

16. Due to his seizures, Mr. Holmes was labeled as General Population and Lower Bunk on his Active Problem List on August 28, 2017. He was actually issued a card explaining his lower bunk status, which was ignored by the Defendants.

17. On August 29, 2017 Mr. Holmes was moved to Block 4A, Cell 214 at which time he told the Corrections Officer ("C.O.") that he has seizures and is Lower Bunk, Lower Tier status.  The C.O. told Mr. Holmes that that information was not his concern and that he should "take it up with the next shift" and forced Mr. Holmes into the top bunk.

18. Despite knowledge of his condition Mr. Holmes was denied essential medication and proper medical care.

19. During the night of August 29, 2017, Mr. Holmes had at least two seizures causing him to fall out of the top bunk and split open his head near his left eye, causing black and blue bruising to various parts of his body, and causing swelling to his hand and knee, small cuts, abrasions and bleeding from the mouth.

20. After his fall, Mr. Holmes was rushed to medical where he received 5-6 sutures near his left eye.

21. On August 31, 2017, Allegheny County Jail personnel were dispatched for a medical emergency on 4A and arrived at Mr. Holmes' cell to find him sitting on the lower bunk with his cellmate standing next to him. Although Mr. Holmes could not recall what happened, his cellmate explained that Mr. Holmes was "seizing all night."

22. Mr. Holmes then explained that he was taking his Keppra as directed, that he did not have any new pain or injuries, and that he was supposed to have been seen in clinic on August 31, 2017 for suture removal and left knee swelling.

23. On September 1, 2017, Mr. Holmes was seen in the clinic because he was continuing to have seizures. During his visit, clinic obtained more information about the history of his seizures and learned that Mr. Holmes did not know why he was having them.

24. On September 3, 2017, Mr. Holmes filed a Complaint to Grievance Officer explaining what had happened on August 29, 2017. Mr. Holmes continued to have seizures and estimates that he had approximately three to six per day.

25. On September 7, 2017, "Seizure Disorder" was added to Mr. Holmes' Active Problem List. Although Seizure Disorder was diagnosed, Mr. Holmes did not receive any additional medicine and did not get a cellmate who could call for help when he heard Mr. Holmes having a seizure.

26. On September 11, 2017, Administrative Assistant Nikki Kazmarczak replied to Mr. Holmes' Complaint to Grievance Officer relating to the incident of August 29, 2017. In her response, Ms. Kazmarczak states that the complaint disposition is "invalid." In addition, she states that Mr. Holmes is Lower Bunk status and that a medical emergency pertaining to Mr. Holmes was issued on August 31, 2017 and she "hopes that this response finds you to be feeling

better." Ms. Kazmarczak failed to address the focus of Mr. Holmes' Complaint which was the incident and injuries from August 29, 2017.

27. Following the labeling of this Complaint as "invalid," Mr. Holmes asked for the paperwork to file an appeal and was told he could not have the paperwork because there was nothing in the response to the complaint to appeal. Put another way, Mr. Holmes was told there was nothing to argue in the choice of words she used. This denial failed to address the fact that Ms. Kazmarczak addressed the August 31st incident and ignored the August 29th incident which was the reason for the Complaint.

28. Subsequently he was denied his right to an appeal form.

29. On September 12, 2017, Mr. Holmes submitted a Sick Call Request to Jail Healthcare Services. In his Request, Mr. Holmes explained that he is still having three to six seizures per night and that he continues to ask the C.O. to call medical which they refuse to do. Additionally, Mr. Holmes explained that he told the nurses who passed out the medicine about his ongoing issues but they told him to put in a Sick Call Request. At this time Mr. Holmes still did not have a cellmate who could call for help during his seizures.

30. Mr. Holmes never received a response to his Sick Call Request of September 12, 2017.

31. On September 14, 2017, Mr. Holmes filed an Inmates Request to Staff Member Nikki Kazmarczak. In his Request, Mr. Holmes explained that: (a) he had filed several Sick Call Request forms with no response, (b) there are times when he is denied his medication at night or only receives half of his dosage, (c) when he talks to the nurses about these issues he does not receive any helpful responses, (d) he continued to have three to six seizures per night, (e) because of the continued denial of proper medical care, he has reached out to his family to look

into what else could be done, (f) it felt as though nobody was taking his condition seriously and all he wanted was to sit down and talk to someone who would help him.

32. Mr. Holmes never received a response to his Inmates Request to Staff Member dated September 14, 2017.

33. On September 15, 2017, Mr. Holmes filed another Sick Call Request to Jail Healthcare Services. In this Request, Mr. Holmes once again explained that he is having three to six seizures per night and that he is not receiving any medical treatment. Additionally, he asked why he was alone in his cell even though a nurse told him he should either be in the infirmary or at least have a cellmate to warn the C.O. of seizures. Mr. Holmes also stated that his previous wounds have not been checked for two weeks, explained that his Keppra level has not even been checked, and warned that others have died from his condition.

34. Mr. Holmes never received a response to his Sick Call Request to Jail Healthcare Services dated September 15, 2017.

35. Also on September 15, 2017, Mr. Holmes filed a Complaint to with the ACJ where he once again explained his concern that he is having multiple seizures per night alone in his cell with no additional medical treatment and no action from the C.O. to call medical or witnesses. Sometimes the seizures caused Mr. Holmes to wake up on the floor bleeding from his mouth, head, or other places. He also explained that he has reached out to everyone he can, including his C.O., his counselor, and up through the chain of command to the warden. Mr. Holmes once again explained that he has been denied medicine at times for several weeks and that he could possibly die from his condition.

36. Mr. Holmes never received a response to his Complaint to Grievance Officer dated September 15, 2017.

37. On September 18, 2017, Mr. Holmes filed an Inmates Request to Staff Member Monte Stephens, Counselor for Block 7-E. In his Request, Mr. Holmes explained that he feels he may need to resort to outside legal action since all his attempts to receive medical treatment have failed. Mr. Holmes provided the name of his neurologist and asked that he be contacted so that he can receive proper care. He also explained once again that he has exhausted all his options to request medical care in the jail and has received no responses to his requests.

38. Mr. Holmes never received a response to his Inmates Request to Staff Member Monte Stephens dated September 18, 2017.

39. On September 19, 2017, Mr. Holmes was seen in the clinic where he reported that he is having three to six seizures per night. Mr. Holmes was aware that he was having seizures because sometimes he would wake up on the floor and other times the person in the neighboring cell would let him know they heard him seizing. The report also lists Mr. Holmes neurologist and stated that he was concerned Mr. Holmes was having panic attacks which should be considered further. The report also claimed that Mr. Holmes failed to pick up additional medicine in June of 2017 but failed to explain why this has anything to do with Mr. Holmes not receiving the right medicine while incarcerated starting in August of 2017.

40. On October 17, 2017, "Seizure Disorder" is once again added to Mr. Holmes' Active Problem List. This time, there is also a date and time of 10/17/17 at 10:16 am listed under "Diagnosed." Although "seizure disorder" was originally listed on Mr. Holmes' Active Problem List on September 7, 2017, there were no changes to his medicine and he continued to be alone in his cell following this diagnosis. Therefore it appears the diagnosis of October 17th is first time Mr. Holmes' condition is properly recognized by the Allegheny County Jail. Mr.

Holmes believes that this diagnosis occurred as the result of a nurse sending an email which requested the proper information from his Neurologist.

41. There is no reason that Mr. Holmes should have gone from August 28, 2017 to October 17, 2017 enduring the pain and suffering from his nightly seizures. During this time, Mr. Holmes used all resources available to him to notify the Allegheny County Jail that he needed additional medical treatment and a cellmate.

42. Following his diagnosis on October 17, 2017, Mr. Holmes continued to be alone in his cell and without a cellmate who could call for help during his seizures.

43. On November 29, 2017, Mr. Holmes filed an Inmates Request to Staff Member "Medical." In this Request, Mr. Holmes explained that he has finally received a cellmate.

44. On December 12, 2017, Mr. Holmes returned for Medical treatment for right hand swelling and pain. This injury was the result of a seizure that Mr. Holmes had about five days prior.

45. On February 14, 2017, "Lower Tier" is once again added to Mr. Holmes' Active Problem List.

46. As the direct, proximate, and factual result of the conduct of the defendants, the Plaintiff, William Holmes, has suffered the following damages:

    a. Plaintiff has suffered a laceration near his eye requiring sutures which resulted in a permanent scar and discomfort;

    b. he has also suffered bleeding from his mouth, head, and other places;

    c. he has also suffered bruising and swelling to various parts of his body;

    d. he has unnecessarily endured great pain, suffering, inconvenience,

        embarrassment, mental anguish, emotional and psychological trauma;

e.     he may be required in the future to incur expenses for medical treatment and care, medical supplies, rehabilitation treatment, medicines and other attendant services;

f.     his general health, strength and vitality have been impaired;

g.     he has in the past, and may continue in the future, to experience severe pain and suffering;

h.     his vision may be permanently impaired; and

i.     he has been required, and may continue in the future, to treat with various medical providers, physicians, and neurologists.

### COUNT I – PLAINTIFF V. ALL DEFENDANTS - SECTION 1983 VIOLATION OF EIGTH AMENDMENT PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT

47.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs 1 to 43 of this Complaint as if fully set forth herein.

48.    At all times material hereto, the Defendant Allegheny County was responsible for the operations and policies of the Allegheny County Jail in all material respects and for the conduct of their contractor, Allegheny Health Network.

49.    At all times material hereto, Allegheny Health Network was responsible for the development and/or promulgation of appropriate policies and practices for the medical care of inmates and to provide for the medical care and well being of all inmates in Allegheny County Jail.

50. At all times material hereto, Superintendent Harper was responsible for ensuring the well being of inmates under his care and ensuring that other jail employees were dutifully performing their jobs.

51. At all times material hereto, Administrative Assistant Nikki Kazmarczak was responsible for ensuring that proper medical treatment was provided to inmates under her care.

52. At all times material hereto, Counselor Monte Stephens was responsible for ensuring that proper medical treatment was provided to inmates under his care.

53. Defendants Allegheny County and Allegheny Health Network were deliberately indifferent to the rights and serious medical needs of Plaintiff by failing to properly implement or execute policies or procedures ensuring that inmates received proper medical care.

54. Defendant's Allegheny County and Allegheny Health Network are also directly, proximately and vicariously liable by failing to properly train, review, assign, oversee, supervise, manage, discipline or control all other listed defendants and have exhibited a pattern and practice of such behavior.

55. All defendants, through their deliberate indifference to Mr. Holmes' serious need for medical care and appropriate accommodations, caused him to suffer physical pain and emotional distress to an unconscionable degree well in excess of that which normally attends prison life.

56. It is believed and therefore averred that all defendants were personally involved in the formation of Allegheny Health Network and Allegheny County Jail policies and practices and as such they contributed to the pattern and practice of denying inmates medical care.

57. As the direct, proximate, and factual result of the conduct of the defendants, the Plaintiff, William Holmes, has suffered the following damages:

a. Plaintiff has suffered a laceration near his eye requiring sutures which resulted in a permanent scar and discomfort;

b. he has also suffered bleeding from his mouth, head, and other places;

c. he has also suffered bruising and swelling to various parts of his body;

d. his vision may be permanently impaired;

e. he has unnecessarily endured great pain, suffering, inconvenience, embarrassment, mental anguish, emotional and psychological trauma;

f. he may be required in the future to incur expenses for medical treatment and care, medical supplies, rehabilitation treatment, medicines and other attendant services;

g. his general health, strength and vitality have been impaired;

h. he has in the past, and may continue in the future, to experience severe pain and suffering; and

i. he has been required, and may continue in the future, to treat with various medical providers, physicians, and neurologists.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays for:

a. Declaratory judgment that Defendants violated Mr. Holmes' constitutional, civil and statutory rights;

b. An award of appropriate compensatory and punitive damages against each Defendant in favor of Mr. Holmes;

c. Awards of attorney's fees, costs, and litigation expenses associated with the prosecution of this action;

d. For such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiff requests a trial by jury with respect to all matters and issues properly triable by a jury.

DATED: 6/6/19

Respectfully submitted,

*s* Louis Kroeck

Counsel for Plaintiff